IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ALYSSA NEUMAN,<br><br>    Plaintiff,<br><br>vs.<br><br>EXPERIS US LLC,<br>MANPOWERGROUP US INC., AND<br>INDEED INC.,<br><br>    Defendants. | CV-25-67-GF-JTJ<br><br><br>ORDER |

## I. INTRODUCTION

On July 9, 2025, Plaintiff, Alyssa Neuman (Neuman) filed a Complaint in the Eighth Judicial District, Cascade County, against Defendants, Experis US, LLC, ManpowerGroup, Inc., and Indeed Inc., (Defendants) alleging claims of wrongful discharge, retaliation, negligent infliction of emotional distress, promissory estoppel, breach of the corporate veil and breach of implied covenant of good faith. (Doc. 4).  On September 4, 2025, following the Defendants' removal of Neuman's Complaint to federal court based upon diversity of citizenship, (Doc. 1) Neuman filed an Amended Complaint, alleging claims for wrongful discharge, retaliation, negligent infliction of emotional distress, promissory estoppel and alter ego/single enterprise. (Doc. 9).

1

Neuman worked for Experis US LLC, assigned to Indeed, Inc. from June of 2021 to March of 2024.  (Doc. 9, ¶ 17).  Neuman  began her employment with Experis as an Engagement Manager and was promoted to Business Operations Manager in May of 2023. (Id.).  On February 28, 2024, Neuman was informed by Experis that her role would be ending on March 31, 2024, due to budget reasons at Indeed and that she would be supported in reassignment. (Id., ¶ 8).  Neuman contends she began an approved leave beginning on February 29, 2024, and ending on March 31, 2024. (Id., ¶ 10).

Defendants have filed a Motion for Summary Judgment and briefs in support. (Docs. 30, 31, and 38).  Defendants contend Neuman's WDEA claim should be dismissed because it was filed outside the one-year statute of limitations. (Doc. 31, p. 3).  Regardless of that fact, Defendants further contend that Neuman's discharge was for good cause because she put herself on unauthorized leave for an entire month without a legitimate reason. (Id.). Defendants further contend that Neuman's claims of negligent infliction of emotional distress and promissory estoppel are preempted by the WDEA and should therefore also be dismissed. (Id., p. 4).  Neuman's alter ego/ single enterprise is a derivative claim that cannot stand on its own. (Id.).  Neuman opposes the motion. (Doc. 36).

## II. LEGAL STANDARDS

Fed. R. Civ. P. 56(a) allows a court to dismiss a complaint if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Pursuant to the Wrongful Discharge from Employment Act WDEA, a discharge is only wrongful if: (a) it was in retaliation for the employee's refusal to violate public policy or

for reporting a violation of public policy; (b) the discharge was not for good cause; (c) the employer materially violated an express provision of its own written personnel policy prior to the discharge, and the violation deprived the employee of a fair and reasonable opportunity to remain in a position of employment with the employer; or (d) the employer terminated the employee solely based on the employee's legal expression of free speech, including but not limited to statements made on social media. Mont. Code Ann. §§ 39-2-904(1)(a)-(d).

"Good cause" under Mont. Code Ann. § 39-2-903(5) means "any reasonable job-related grounds for an employee's dismissal based on: (a) the employee's failure to satisfactorily perform job duties; (b) the employee's disruption of the employer's operation; (c) the employee's material or repeated violation of an express provision of the employer's written policies; or (d) other legitimate business reasons determined by the employer while exercising reasonable business judgment." The employer has the broadest discretion when making a decision to discharge any managerial or supervisory employee. Mont. Code Ann. § 39-2-904(3).

An action under the WDEA must be filed within 1 year after the date of discharge. Mont. Code Ann. § 39-2-911(1). This period may be tolled for up to 120 days if an employee is pursuing an employer's internal administrative procedures to contest the termination. Mont. Code Ann. § 39-2-911(2).

## III. DISCUSSION

### A.  The WDEA's statute of limitations bars Neuman's wrongful discharge

**claim (Count I) and her retaliation claim (Count II).**

Defendants contend that Neuman was notified on February 28, 2024, that her assignment with Indeed was ending on March 31, 2024, due to budgetary reasons. (Doc. 31, p. 5). The next day, February 29, 2024, Neuman advised her supervisor at Indeed she would be on leave from February 29, 2024, to March 31, 2024. (Id.). A representative from Experis communicated with Neuman to ask if she was leaving her assignment early. (Id., p. 6). Neuman responded that she was taking leave but would be available to discuss other placement opportunities. (Id., p. 7). After Neuman failed to adequately communicate with Defendants regarding her unapproved leave of absence, including failing to apply for leave with Defendants' third-party administrator, MetLife, Defendants notified Neuman that her employment was ending on March 15, 2024. (Id.) Neuman received this notice on March 19, 2024. (Id.) Defendants contend that whatever date in March is used for Neuman's termination, she did not file her complaint until July 9, 2025. (Id.) Therefore, according to Defendants, Neuman's WDEA claim is barred by the one-year statute of limitations. (Id.)

Defendants further contend that the law does not support an equitable tolling of the statute of limitations. According to Defendants, *Weidow v. Uninsured Employers Fund*, 246 P.3d 405, 709 (Mont. 2010), provides that equitable tolling is not appropriate in cases in which the litigant has failed to meet a deadline because of garden variety neglect. Because Neuman's reasons for delay including health issues, delay in formal termination notice, and seeking a settlement, are akin to garden variety neglect, equitable tolling does

not save Neuman's complaint from being time barred. (Doc. 31, p 10).

Neuman contends that equitable tolling should apply. (Doc. 36, p. 4). Neuman argues that Defendants' conflicting records regarding her separation from employment prevented her from clearly knowing when the statute of limitations period began, which supports equitable tolling. (Id.). Neuman further contends her severe and continuous medical conditions support an equitable tolling, and that Defendants have not suffered any prejudice from the delay in filing her complaint. (Id., p. 6).

The common law doctrine of equitable tolling applies in circumstances where a Plaintiff suffers a substantial prejudice because Defendant concealed a claim, despite Plaintiff's exercise of due diligence. *Millestead v. Montana Child and Family Services Division*, 2026 WL 594630 *6, (D. Mont. March 3, 2026), citing *Schoof v. Nesbit*, 316 P.3d 831, 841 (Mont. 2014). In *Millestead,* the Court rejected plaintiff's equitable tolling argument finding that the plaintiff knew of injury, any concealment of records did not prevent her from pursuing her opportunity to sue, and she did not exercise reasonable amount of diligence in pursuing her claim. *Id.* Similarly in *Sugg v. Valley County*, CV-24-70-GF-KLD, 2026 US LEXIS 43437 * 9-11 (D. Mont. March 3, 2026), the court stated that equitable tolling is appropriate when a Defendant's conduct concealed the existence of a claim, regardless of whether the conduct was fraudulent or intentional, citing *Running Crane v. US*, 634 F. Supp 946, 953 (D. Mont. 2022). However, equitable tolling is not appropriate in a case in which the litigant failed to meet a deadline because of garden variety neglect. *Id*., citing *Weidow*, 246 P.3d at 709.

The same analysis should apply to this case.  Neuman was aware of her claim when she was terminated in March of 2024.  Although Neuman contends the Defendants' records confuse the exact date she was terminated, she does not dispute that her termination occurred in March of 2024.  Further, there is no allegation that Defendants concealed any information from her to prevent her from pursuing her claim. Neuman has also not alleged that she was pursuing her employer's internal administrative procedures to contest the termination allowing a tolling of the statute of limitations for up to 120 days, pursuant to Mont. Code Ann. § 39-2-911(2).

Neuman failed to exercise due diligence in timely filing her claim.  Neuman's reasons for delay including her medical issues and seeking settlement fall within the category of garden variety neglect to which the doctrine of equitable estoppel does not apply.  Neuman's WDEA claim shall be dismissed for failure to comply with the one-year statute of limitations.

Neuman's retaliation claim fails for the same reason.  Neuman alleges that she "reported workplace harassment on March 14, 2024, including threats violating public policy under Montana labor laws."  (Doc. 9, ¶ 22). Neuman alleges Mont. Code Ann. § 39-2-904(1)(a), which provides that a discharge is "wrongful if . . . it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy," is the basis for her retaliation claim. (Id.). Neuman failed to file her retaliation claim within the one-year statute of limitations.

**B. Whether Defendants had good cause to terminate Neuman's employment.**

The Defendants alternatively argue that if Neuman's WDEA and retaliation claims are not dismissed based on the statute of limitations, they should be dismissed on the basis that it had good cause to terminate Neuman's employment. (Doc. 31, pp. 12-14). Because the Court has determined that Neuman did not file her complaint within the applicable statute of limitations, the Court need not address this argument.

**C. The WDEA bars Neuman's claims for negligent infliction of emotional distress and promissory estoppel.**

Mont. Code Ann. § 39-2-905(4) provides that "[T]here is no right under any legal theory to damages for wrongful discharge under this part for . . . emotional distress." Further, the WDEA bars any claim that is inextricably linked to a wrongful discharge claim. *Kulm v. Montana State University-Bozeman,* 948 P.2d 243 (Mont. 1997).

The Court agrees with Defendants that Neuman's negligent infliction of emotional distress claim (Count III) is inextricably intertwined with the same conduct that forms the basis of her wrongful discharge claim (Count I) and retaliation claim (Count II), both of which are brought under the WDEA.  Therefore, the WDEA preempts Neuman's negligent infliction of emotional distress claim (Count III). Similarly, Plaintiff's claim for promissory estoppel alleges that by terminating her employment without good cause, Experis breached its promise of reassignment to her.  This claim is also inextricably linked to her claims under the WDEA and is therefore preempted by the WDEA as well.

Finally, Neuman's last claim of "Alter-Ego/Single-Enterprise (Remedy Theory)" set forth in Count V seeks to impose joint and several liability upon Defendants Experis US

LLC and ManpowerGroup US Inc. Because this Order grants Defendants' motion of summary judgment on all of Neuman's substantive claims against Defendants, Neuman's attempt to impose joint and several liability upon Defendants is rendered moot.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED**.

DATED this 8th day of July 2026.

John Johnston
United States Magistrate Judge